# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
#### 1:23-cv-00079-RJC

| | |
|---|---|
| CHRISTINA THOMAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>COMMISSIONER OF SOCIAL )<br>SECURITY, )<br>)<br>Defendant. )<br>_____) | <u>MEMORANDUM AND ORDER</u> |

**THIS MATTER** is before the Court on Plaintiff's Social Security Brief, (Doc. No. 6), Defendant's Brief (Doc. No. 8), and Plaintiff's Reply Brief, (Doc. No. 9).[1]

Having fully considered the written arguments, administrative record, and applicable authority, the Commissioner's Decision is **AFFIRMED.**

## I.    PROCEDURAL HISTORY

The Court adopts the procedural history as stated in the parties' briefs and discusses relevant portions below. Plaintiff Christina Thomas filed the present action on March 21, 2023. (Doc. No. 1). Plaintiff appeals on two fronts. First, Plaintiff assigns error to the Administrative Law Judge's ("ALJ") determination of her Residual Functional Capacity ("RFC")[2]. Specifically, Plaintiff argues the ALJ

---

[1] [1] Following amendments to the Supplemental Rules for Social Security Actions, 42 U.S.C. § 405(g), and to Local Civil Rule 7.2, the parties are no longer required to file dispositive motions.

[2] The Social Security Regulations define "Residual Functional Capacity" as "the

did not explain why his RFC finding fails to include a near-vision limitation when evidence exists, which the ALJ did not consider, showing Plaintiff had blurry vision before her date last insured ("DLI"). (Doc. No. 6 at 5). By failing to acknowledge or articulate the weight of the evidence pertaining to Plaintiff's blurred vision both before and after her DLI, the ALJ failed to logically bridge the evidence to his conclusion. (Doc. No. 9 at 2).

Second, Plaintiff argues that the ALJ failed to meet his statutory burden under 42 U.S.C. § 423(d)(2)(A) because neither the Vocational Expert ("VE") nor the ALJ asserted any of the jobs identified for Plaintiff exist in any significant number in Plaintiff's region or in several regions of the country. (Doc. No. 6 at 6). Even if a national showing suffices, Plaintiff argues 32,000 is too insignificant a number on a national showing to meet the statutory requirement. (*Id.*)

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, *Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990); *see also Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992) (*per curiam*). The District Court does not

---

most [a claimant] can still do despite your limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] [R]esidual [F]unctional [C]apacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

review a final decision of the Commissioner *de novo*. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979); *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The Fourth Circuit defined "substantial evidence" as being "more than a scintilla" and "do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."' *Smith v. Heckler*, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see also Seacrist v. Weinberger*, 538 F.2d 1054, 1056–57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence.").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. *Hays v. Sullivan*, 907 F.2d at 1456 (4th Cir. 1990); *see also Smith v. Schweiker*, 795 F.2d at 345; *and Blalock v. Richardson*, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. *Lester v. Schweiker*, 683 F.2d 838, 841 (4th Cir. 1982).

"To pass muster, ALJs must build an accurate and logical bridge from the

evidence to their conclusions." *Id.* (citation omitted); *see also Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (finding the ALJ failed to build an accurate and logical bridge from the evidence to his conclusion). Where the ALJ fails to build that logical bridge, the Court must remand for further proceedings. *See Monroe*, 826 F.3d at 189; *Patterson v. Comm'r of Soc. Sec.*, 846 F.3d 656, 663 (4th Cir. 2017)).

## III.   DISCUSSION

The question before the Administrative Law Judge was whether Plaintiff was disabled within the meaning of the Social Security Act at any time through December 31, 2018, her DLI.[3] The Court has carefully reviewed the record, the authorities, and the parties' arguments. For the reasons contained herein, the Court affirms the Commissioner's decision.

### A.  RFC Determination

To determine whether a claimant is disabled, ALJs use a five-step sequential evaluation process set forth in 20 C.F.R § 404.1520(a)(4); s*ee also Mascio v. Colvin*, 780 F.3d 632, 634 (4th Cir. 2015). The process proceeds as follows:

> at step one, the ALJ determines whether the claimant is unemployed. At step two, the ALJ determines whether the claimant's impairments are severe enough, and have lasted long enough, to satisfy the regulations' threshold requirements. At step three, the ALJ determines whether the claimant's impairments match—or are functionally equal to—an impairment listed in the regulations; if not, the ALJ makes a finding as to the claimant's RFC, which is the maximum work the

---

[3] Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an "[i]nability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." *Pass v. Chater*, 65 F. 3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A) (alteration in original)).

claimant can do for a full workweek despite her impairments. At step four, the ALJ determines whether the claimant's RFC enables her to do the work she did in the past; if not, the ALJ moves on to step five. At step five, the ALJ determines whether the claimant—given her RFC, her age, her education, and her prior work experience—can do any other work that "exists in significant numbers in the national economy." 20 C.F.R. § 416.960(c)(2).

*Thomas v. Berryhill*, 916 F.3d 307, 310 (4th Cir. 2019). "For the first four steps, the burden lies with the claimant; at step five, it shifts to the Commissioner." *Id.* (quoting *Mascio*, 780 F.3d at 635 (4th Cir. 2015)).

When assessing a claimant's RFC, "the ALJ 'must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Monroe v. Colvin*, 826 F.3d 176, 187 (4th Cir. 2016) (quoting Social Security Ruling 96-8p, 1996 SSR LEXIS 5, 61 Fed. Reg. 34,474, 34,475 (July 2, 1996). The ALJ "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Mascio*, 780 F.3d at 636. "In other words, the ALJ must *both* identify evidence that supports his conclusion *and* build an accurate and logical bridge from [that] evidence to his conclusion." *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018) (citations omitted) (emphasis and alteration in original). Accordingly, "meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas*, 916 F.3d at 311.

In this case, the ALJ builds an "accurate and logical bridge" from the

5

evidence presented to his conclusion. "While the Commissioner's decision must 'contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based' . . . 'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision,'" *Reid v. Comm'r of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam)); *see also Britt v. Saul*, 860 F. App'x 256, 262 (4th Cir. 2021) (finding although the ALJ "did not specifically mention [claimant's] chronic pain, reflux, and hypothyroidism in the [RFC] analysis, neither our caselaw nor the regulations explicitly require this. The judge is only required to *consider* these non-severe impairments." (emphasis in original)). Additionally, the reviewing court should read the ALJ's opinion "as a whole," *Keene v. Berryhill*, 732 F. App'x 174, 177 (4th Cir. 2018) (unpublished), and the ALJ "need only review medical evidence once in his decision," *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002) (unpublished).

The ALJ discusses Plaintiff's vision impairment throughout his decision, noting Plaintiff's own testimony regarding her blurred vision, (Tr. 31), as well as tracking the relevant medical evidence concerning Plaintiff's vision, vision-related surgeries, and peripheral vision. (*Id.* at 33–38). For example, the ALJ acknowledged that Plaintiff presented to Park Ridge Health Neurology on December 13, 2018, for evaluation after having stroke-like symptoms, including reports of blurred vision. (*Id.* at 33). The ALJ also noted that on February 13, 2019, claimant visited

Asheville Eye Associates where she reported blurred vision, flashes, and floaters. (*Id.* at 34). The ALJ discussed her visit and her follow-ups both there and at her primary care, as well as her subsequent cataract surgeries. (*Id.* at 34–36). The ALJ also noted Plaintiff's neurology follow-up, where the ALJ articulated her "[p]eripheral vision was grossly intact." (*Id.* at 35).

The ALJ then factored his considerations of Plaintiff's testimony into his explanation for his RFC finding, concluding that "[t]he record is unsupportive of her testimony at the hearing to the degree alleged, prior to her established onset date." (*Id.* at 37). Further, the ALJ specifically accounted for Plaintiff's vision loss in the RFC. (*Id.* at 38). Lastly, the ALJ stated "that the record as a whole does not support the claimant's allegations of disabling pain and other disabling symptoms." (*Id.*); *see Reid*, 769 F.3d at 865 ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter." (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). Accordingly, this Court finds the ALJ considered all the evidence before him, his decision is supported by substantial evidence, and Plaintiff's first assignment of error does not warrant remand.

### B. Step-Five Burden

Plaintiff maintains that the ALJ failed to assert that any of the 32,000 jobs it determined Plaintiff capable of performing existed in significant numbers in the region where Plaintiff lives or in several regions of the country. (Doc. No. 6 at 6). Plaintiff puts forth a statutory interpretation argument based on the plain

language, the correlative conjunctions in the statute, and the legislative history, arguing that the significance of the number of jobs should be considered regionally, not nationally. (*Id.* at 7–9). Nevertheless, Plaintiff argues that 32,000 jobs is an insignificant number of jobs in the national economy. (*Id.*). For the reasons discussed below, the Court finds the ALJ met his step-five burden.

"In determining that a claimant is not disabled, the ALJ needs to find *inter alia* that the claimant can perform 'work which exists in significant numbers' in the national economy." *McCall v. Saul*, 844 F. App'x 680, 681 (4th Cir. 2021) (unpublished) (quoting 42 U.S.C. § 423(d)(2)(A)). This means "work which exists in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1566(a). "[E]vidence of jobs existing nationally constitutes evidence of work existing in several regions of the country, at least where there is nothing in the number of jobs or the nature of the jobs identified to indicate that those jobs would exist only in limited numbers in isolated regions of the country." *McCall*, 844 F. App'x at 681 (citing *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 528–29 (9th Cir. 2014) (holding that evidence of 25,000 jobs nationwide is a large enough number to represent a significant number of jobs in several regions of the country); *accord Snow v. Kijakazi*, No. 5:20-CV-378-FL, 2022 U.S. Dist. LEXIS 57740, at *11 (E.D.N.C. Mar. 30, 2022); *Vining v. Astrue*, 720 F. Supp. 2d 126, 138 (D. Me. 2010) ("[C]ourts have overlooked an absence of testimony that jobs do exist 'in several regions of the country' when 'a reasonable mind could conclude' that they do.");

*Lonnie R. v. Kilolo Kijakazi*, No. 3:21-cv-00254-MRC, 2023 U.S. Dist. LEXIS 38334, at *10 (E.D. Va. Mar. 7, 2023) ("The burden at step five can be satisfied by identifying jobs that exist either nationally or in the local economy, so long as there is nothing to suggest the job would exist only in isolated locations.").

"[T]he Fourth Circuit has not established a minimum requirement for the number of positions that must be available to an individual, but generally speaking, it does not have to be a particularly large number." *Leigh v. Saul*, No. 1:19-cv-00142-FDW, 2020 U.S. Dist. LEXIS 115684, at *11 (W.D.N.C. June 30, 2020) (citation omitted). The Fourth Circuit has suggested that as few as 110 jobs in a local economy is a significant number. *See Hicks v. Califano*, 600 F.2d 1048, 1051 n.2 (4th Cir. 1979) ("We do not think that the approximately 110 jobs testified to by the vocational expert constitute an insignificant number.").

Plaintiff concedes—and this Court agrees—that nothing in the nature of the jobs identified by the vocational expert indicates they would exist only in isolated regions of the country. (Doc. No. 6 at 10). The ALJ's finding of 32,000 jobs nationwide—12,800 order clerk, 10,200 inspector, and 9,000 ticket checker jobs—falls within the bounds of established case law. *Cogar v. Colvin*, No. 3:13-CV-380-FDW, 2014 U.S. Dist. LEXIS 59995, at *19–20 (finding "830 laundry folding jobs in North Carolina and 35,000 laundry folding jobs nationally constitutes a significant number); *Hodges v. Apfel*, No. 99-2265, 2000 U.S. App. LEXIS 1112, 2000 WL 121251, at *1 (4th Cir. Jan. 28, 2000) (unpublished) (finding 153 jobs constitutes a significant number); *Dixon v. Saul*, 4:20-CV-53-FL, 2021 U.S. Dist. LEXIS 39496,

9

at *32–33 (E.D.N.C. Jan. 26, 2021) (finding 5,600 jobs nationally constitutes a significant number); *see also Hall v. Bowen*, 837 F.2d 272, 275 (6th Cir. 1988) (finding between 1,350 and 1,800 jobs in the local area sufficient).

Accordingly, Plaintiff's second assignment of error does not warrant remand. The ALJ's decision is supported by substantial evidence and the correct legal standard was applied. The Commissioner's decision is affirmed.

## IV.   CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1.  The Commissioner's decision is **AFFIRMED**.

2.  The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.

**SO ORDERED.**

Signed: January 6, 2025

Robert J. Conrad, Jr.
United States District Judge

10